*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re WILLIAMS-BLAIR/CROSS, Minors.

UNPUBLISHED
April 14, 2022

No. 358261
Calhoun Circuit Court
Family Division
LC No. 2020-000878-NA

Before: BORRELLO, P.J., and MARKEY and SERVITTO, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order terminating her parental rights to the five minor children under MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist) and (j) (reasonable likelihood that children will be harmed if returned to parent's home). We affirm.

The record reveals that for approximately 15 years respondent regularly suffered physical abuse at the hands of Kendall Blair, who respondent asserted was the biological father of four of the children. One episode of abuse resulted in respondent's loss of an eye and a stint in prison for Blair. There was evidence that the children witnessed the abuse and were traumatized by the events. Respondent, however, refused to acknowledge that the children observed any abuse or that they were traumatized by the violence. And she continued to allow Blair to be present around the children. Indeed, respondent was hostile toward caseworkers who challenged her actions in permitting Blair's presence, declaring that Blair had the right to see his children. Respondent essentially ignored a personal protection order (PPO) that she herself had procured against Blair. She contended that the allegations made in support of the PPO application were untrue. At times, respondent downplayed or denied the abuse, claiming that she was often intoxicated and committed domestic violence against Blair. Both Blair and respondent have extensive criminal records, and she has a history of abusing alcohol. Respondent was often defiant, combative, and uncooperative when interacting with personnel of the Department of Health and Human Services (DHHS) and other authorities. She accused caseworkers of lying, even though there was evidence that it was respondent who regularly lied with respect to her relationship with Blair, his presence in the home, and other matters. Respondent also engaged in acts that sought to undermine, interfere with, and create chaos in regard to the children's placements in foster care. The children all made great strides for the better while in foster care, which angered respondent.

There was evidence that respondent missed numerous parenting-time visits, that she failed to participate in treatment and counseling for substance abuse, mental health issues, and domestic violence despite such services being desperately needed and offered to her by DHHS, that to the limited extent that she engaged in some services, she exhibited no benefit, that she never produced proof of employment as required, and that she failed to provide documentation or evidence regarding her purported rental housing. The record is replete with respondent's acts of gamesmanship. Dr. Randall Haugen testified that respondent required at least one year of sustained participation in services and improvement before he would even *consider* reunification in light of respondent's inability to acknowledge the domestic violence and substance abuse in her life, which had traumatized and scarred the children. He further testified that the children essentially parented themselves, with the oldest child—13 years of age—reporting that she would buy ramen noodles to feed the other children when respondent was too intoxicated to parent. The trial court terminated respondent's parental rights to the children under MCL 712A.19b(3)(c)(*i*) and (j).

On appeal, respondent argues that the trial court clearly erred by finding that there existed clear and convincing evidence supporting the grounds for termination and by finding that termination of respondent's parental rights was in the children's best interests. Respondent's arguments are cursory, and she inaccurately indicates that the trial court relied, in part, on MCL 712A.19b(3)(b)(*i*) and (g). Although she correctly references MCL 712A.19b(3)(j), there is no mention of MCL 712A.19b(3)(c)(*i*) or the principles contained in that provision. "When an appellant fails to dispute the basis of a lower court's ruling, we need not even consider granting the relief being sought by the appellant." *Smith v Smith*, 328 Mich App 279, 285 n 3; 936 NW2d 716 (2019) (quotation marks and citation omitted).

If a trial court finds that a single statutory ground for termination has been established by clear and convincing evidence and that it has been proved by a preponderance of the evidence that termination of parental rights is in the best interests of a child, the court is mandated to terminate a respondent's parental rights to that child. MCL 712A.19b(3) and (5); MCR 3.977(H)(3); *In re Beck*, 488 Mich 6, 10-11; 793 NW2d 562 (2010); *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013); *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). "This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011); see also MCR 3.977(K). "A finding . . . is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed[.]" *In re BZ*, 264 Mich App 286, 296; 690 NW2d 505 (2004). In applying the clear error standard in parental termination cases, "regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989); see also MCR 2.613(C).

MCL 712A.19b(3)(c)(*i*) provides for termination of parental rights when "182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds" that "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." In this case, the evidence clearly demonstrated that the conditions leading to adjudication—primarily respondent's continued involvement with Blair despite his abusive actions in front of the children—continued to exist and that there was no reasonable

likelihood that the conditions would be rectified within a reasonable time considering the ages of the children. There certainly was no clear error by the trial court in relying on MCL 712A.19b(3)(c)(*i*) as a ground for termination. Respondent never truly or fully acknowledged the ongoing domestic violence and that it was perpetrated in front of the children. And she continued to allow Blair to be present in the home and around the children despite the physical abuse, defiantly disregarding DHHS's demands.[1] And, once again, respondent does not even specifically address and challenge the trial court's ruling under MCL 712A.19b(3)(c)(*i*).

Termination of parental rights under MCL 712A.19b(3)(j) is proper when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." "The harm contemplated under MCL 712A.19b(3)(j) includes *emotional* harm as well as physical harm." *In re Sanborn*, __ Mich App __, __; __ NW2d __ (2021) (Docket Nos. 354915 and 354916); slip op at 12 (emphasis added). The full extent of respondent's argument is that there was "[n]o evidence . . . presented that [respondent] ever engaged in any domestic violence around the children." This argument entirely misses the point that the children incurred significant emotional harm by being exposed to domestic violence on a regular basis that was committed by Blair against respondent.[2] To the extent that respondent is asserting that the children did not witness any domestic violence no matter who committed the abuse, there was direct evidence to the contrary. Moreover, because the record makes exceptionally clear that respondent had no intention of separating herself and the children from Blair and refused to acknowledge the domestic violence and the emotional harm suffered by the children in witnessing the violence, there was a reasonable likelihood that the children would be emotionally harmed once again if returned to respondent's home. Additionally, respondent's alcohol abuse, which resulted in the children fending for themselves at times, supported application of MCL 712A.19b(3)(j). We hold that the trial court did not clearly err by ruling that MCL 712A.19b(3)(j) was established by clear and convincing evidence.

With respect to a child's best interests, we place our focus on the child rather than the parent. *In re Moss*, 301 Mich App at 87. In assessing a child's best interests, a trial court may consider such factors as a "child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). The trial court may also consider how long the child was in foster care or placed with relatives, along with the likelihood that "the child could be returned to [the]

---

[1] We do not mean to minimize in any form or manner the destructive physical and psychological harm sustained by victims of domestic abuse, especially in cases where the abuse has been long term, which abuse can understandably impact rational decision-making. But, ultimately, the safety and the wellbeing of children exposed to continual frightening abuse, as present in this case, must take precedence.

[2] We do note that respondent indicated that she also committed acts of domestic violence against Blair.

parents' home within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012).

Respondent maintains that termination of her parental rights was not in the children's best interests. Respondent, acknowledging that the children had been in foster care for 14 months, argues that 14 months is "not an exceedingly lengthy amount of time" and that a few more months in foster care would not have harmed the children. Respondent also contends that there was a strong bond between her and the children.

There was testimony that the bond between respondent and the children was unhealthy, considering that the children felt a need to protect respondent out of loyalty and that the relationship was backward, meaning that the children took care of the parent. Dr. Haugen testified that the children needed permanency, stability, and intensive intervention in order to overcome the trauma that they had suffered. And the evidence demonstrated that respondent failed to even recognize the trauma or her role in the matter. The record overwhelmingly reveals that respondent maintained some form of a relationship with Blair and saw no problem in doing so. Although the children reported a desire to return to respondent's care, they did not wish to do so if it meant bearing witness to further domestic violence committed against their mother. Furthermore, respondent's abuse of alcohol left the children without proper care.

On the other hand, the children had become bonded to their foster families, who all wished to adopt them. The school-aged children were involved in extracurricular activities and had made neighborhood friends. The children were thriving in foster care. Parenting time with respondent triggered anxieties, outbursts, and defiance in the children that were greatly reduced after parenting-time visits were suspended. While respondent argues that a few more months in foster care would not have harmed the children, there is no indication whatsoever that respondent would have engaged in or benefited from services during the interim; there had been no improvement at the time of termination, and it would be unreasonable to believe that respondent would have suddenly embraced services. In sum, the trial court did not clearly err in concluding by a preponderance of the evidence that termination of respondent's parental rights was in the best interests of the children.

We affirm.

/s/ Stephen L. Borrello
/s/ Jane E. Markey
/s/ Deborah A. Servitto